JOHN ANDERSON *vs.* NEGRO JULIA ANN BAILY.
*June,* 1836.

L, the owner of a female slave, declared by deed of manumission duly executed and recorded in 1803, that she should be free, at thirty years of age, "and in case the said negro girl, may hereafter, have a child or children before she arrives at the age of thirty, that then such child or children shall be free, at their birth." *Held,* that under the act of 1796, ch. 67, sec. 13, the children of the said female slave, at their birth, not being able to work and gain a sufficient maintenance, could not be liberated.

APPEAL from *Baltimore* city court.

The appellee petitioned for her freedom on the 1st of June, 1833, and after an appearance, and denial of her right by the appellant, the case was submitted to the court below, upon the following statement of facts :

" It is admitted that *Gideon Longfellow,* of *Kent* county, was heretofore the legal owner of a female slave named *Lucy,* and on the second day of December, 1803, executed in due form of law, the following deed of manumission, which was duly recorded in *Kent* county court.

" *Maryland.—Kent* county, to wit : To all whom it may concern, be it known, that I, *Gideon Longfellow,* of the county and state aforesaid, for divers good causes and considerations, me thereunto moving, do hereby release from slavery, manumit, and set free, my negro girl named *Lucy,* being of the age of eleven years or thereabouts, when she shall arrive at the age of thirty years ; and in case the said negro girl *Lucy* shall, or may hereafter have a child or children, before she arrives at the age aforesaid, that then, such child or children, shall be free at their birth.

"I do hereby acknowledge the said negro girl *Lucy*, discharged from all claim of service and right of property, whatever from me, my heirs, executors, or administrators, from and after she arrives at the age aforesaid. In testimony, &c."

It was further admitted, that said *Longfellow*, shortly after the execution and recording of said manumission sold, or otherwise disposed of his right in said *Lucy*, to one *Henry Taylor*, of the same county, in whose family, she remained until her arrival to the age of thirty, when she became free, and with the consent of said family removed to the *City of Baltimore*, where she has continued to reside ever since. It was further admitted, that the petitioner is the child of the said *Lucy*, named in the manumission, and was born after the execution thereof, but before her mother became entitled to her freedom, and is now nineteen years of age. That said *Lucy*, survived the said *Taylor*, and the time she had to serve was appraised in his estate. That about two years before his death said *Taylor*, gave the petitioner then a small child to his daughter, the wife of the defendant, who took her into possession, and held her until after her father's death, when the family supposing to be free under the said manumission, suffered her to depart from their service, and come to *Baltimore*, to reside, and where she has continued to reside for about ten years last past, enjoying her freedom, without any claim being made to her as a slave, until arrest by said *Anderson*, which occasioned the filing this petition.

That the said *Lucy*, during the time of her servitude with *Taylor*, had three other daughters *Eliza*, *Jane*, and *Hannah*, and that neither they, or the petitioner were appraised as part of his estate.

Upon the statement of facts, the *City court*, gave judgment for the petitioner, and from that judgment the defendant appealed to the Court of Appeals.

The case was submitted to BUCHANAN, Ch. J. and STEPHEN, ARCHER, DORSEY, and CHAMBERS, Judges, upon

written arguments furnished by the counsel to the court, but which the reporters have not seen.

ARCHER, Judge, delivered the opinion of the court.

The case of *Hamilton and Cragg*, 6 *Har. and Johns.* 16, is decisive of this cause. This court there determined, that the provisions of the act of 1796, ch. 67, sec. 13, applied to the will then under consideration, and that the petitioner in that case was not entitled to freedom. *Rachel Turner*, made her will in 1801, containing the following clause, "I give and bequeath to my loving sister, *Sarah Turner*, five negroes by name, *Frank, Joe, Tille, Mill,* and *Linn*, to possess and enjoy during her natural life, them and their increase, and my will is, that after my sister's death, the above named negroes be free."

The petitioner was the son of *Mill*, and was born after the death of *Rachel Turner*, and at the death of the legatee for life, he was about two years of age. The court in delivering their opinion say, that the issue of the negroes named, one of whom was the petitioner, though unborn at the time of the will, were equally objects of the testatrix's benevolence, with the negroes themselves, and were entitled to their freedom, if they were in a predicament to receive it. They then proceed to adjudge, that he was not entitled to freedom under the act of 1796, because he was not when his freedom was to commence, *able to work, and gain a sufficient maintenance.*

It thus appears, that although the testator intended to give freedom to the issue, yet that such freedom was entirely dependant upon the "issue's" ability to gain a sufficient maintenance. So in this case the intention is express, to liberate the issue at its birth, but the intention cannot be legally perfected, for at the moment of time, when the freedom is to operate, the petitioner was incompetent to take it; that is, she was unable to gain a sufficient maintenance. It certainly can make no difference, that by the deed, the issue is to be free at its birth, at two years old, on a contingency; if when the contingency happens the issue is not able to work and

gain a maintenance; because in each case, there is a legal incapacity for freedom.

That in the two latter cases the issue was born a slave, according to the intention of the manumittor, and that in the former at its birth, so far as intention would affectuate any thing, he was free, could not furnish the basis for a different adjudication in the two cases; because the law of 1796, applies at the moment of birth, so that the intention cannot be carried into effect against the statutory disability.

If the statement had concluded with submitting the facts of this case to the judgment of the court, we should have adjudged the petitioner to be a slave; but it submits nothing to the court, and we shall award a *procedendo.*

JUDGMENT REVERSED AND PROCEDENDO AWARDED.